## Penn Township Road.

1. The jurisdiction of the Quarter Sessions over state roads is one of special authority not of general power.

2. The only power of the court over a state road is to change or supply its route by a new road and to vacate so much of the state road as shall be supplied.

3. The new route becomes the state road and is not an independent county road.

4. Under the general road laws viewers may vacate parts only of an old road.

5. Viewers to alter and supply a designated portion of a state road laid out a road supplying the state road but vacated only part of that which was supplied. The Quarter Sessions confirmed the report. The Supreme Court modified the order of confirmation by directing the part of the state road supplied to be vacated.

6. The road law directing the part of the state road supplied to be vacated, is mandatory.

7. Mill Creek Road, 5 Casey 197, adopted.

November 8th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Certiorari to the Court of Quarter Sessions of *Allegheny county:* No. 126, to October and November Term 1870.

On the 29th of March 1787, an act was passed for laying out a state road, from the Frankstown junction of the Juniata river to the Conemaugh river, and in 1791, a supplement was passed, continuing the road to Pittsburg. In pursuance of these acts a state road was laid out. On the 16th of October 1869, a petition was presented setting forth that the portion of the state road "in Penn township, beginning on the Pittsburg and Leechburg road, at a point about half-way between Stotler's shop and H. M. Wilson's residence, thence by residence of Henry Morrow (late deceased), and of John Morrow, to the point where the Turtle Creek road intersects said Frankstown road, near the residence of David Collins, is injudiciously located," &c., and praying that "the portion of said Frankstown road above described, or so much thereof as the court may deem meet, be vacated and altered so as to render the travel on said road less inconvenient and burdensome to your petitioners and to the public."

Viewers were accordingly appointed, who reported that they had viewed, &c., "and considering a change of location of the said road necessary, we proceeded to vacate and change the said road in manner following, viz.: We vacate that portion of the road mentioned in said order, beginning at a point where the Turtle Creek road intersects the said Frankstown road, near the residence of David Collins; thence (giving the courses and distances) to the point where the public road leading from the northern turnpike * * * intersects said Frankstown road, near the residence of John Morrow: for the reason that the portion so vacated

[Penn Township Road.]

is of very steep and heavy grade, and inconvenient and burden-some for public travel; and we do further report that we have viewed and laid out and do return for public use and travel the following road: Beginning at said point where the Turtle Creek road intersects said Frankstown road, and thence, &c., (giving the courses and distances of the new road), to a point on the old Frankstown road, &c., thence, &c., (giving the several courses and distances) to the place of beginning mentioned in said order." * *

The report of the views laid out a new road for the whole distance between the points of the state road mentioned in the petition, but left about two-thirds of the state road between the same points as it had been.

The report was confirmed nisi, December 11th 1869, and the following exceptions filed:—

1. Viewers should have vacated, changed, or adopted the whole of the old road between the points prayed for by the petitioners—their report should show that they had done so.

2. The viewers had no power to vacate part of the old state road *between the termini* of the new road, and leave a part of the old road without adopting it and making it a part of the new road.

4. The report does not state, nor the plot show, that the new road is intended to supply the place of the old road; but on the contrary, part of the old road is left in full life and being between said termini.

8. The petition should have been to alter and amend and not to vacate the state road; the court has no power to vacate any part of a state road.

The exceptions were overruled April 2d 1869, the road confirmed and ordered to be opened.

The exceptants removed the proceedings to the Supreme Court by certiorari, and assigned for error overruling the exceptions and confirming the road.

*H. H. McCormick* (with whom was *C. C. Taylor*), for the certiorari.—The only power the Quarter Sessions has over state roads is to change or supply the route by a new road, and thereupon to vacate so much of the state road as shall be thus supplied: Act of June 13th 1836, § 2, Pamph. L. 558, Purd. 874, pl. 27; Phœnixville and Trappe Road, 2 P. F. Smith 161.

*A. M. Stoteler*, contrà, referred to Loretto Road, 5 Casey 350; Act of 1836, *supra;* Act of May 3d 1855, § 1, Pamph. L. 422, Purd. 873, pl. 26; Hess's Mill Road, 9 Harris 217; Southampton Road, Id. 356.

The opinion of the court was delivered, November 21st 1870, by

[Penn Township Road.]

AGNEW, J.—The viewers in this case laid out a new road between two points on the state road to Frankstown, within Penn township, and vacated only about one-half of the state road thus supplied. The remaining half was not vacated on account of its connection with the northern turnpike. There is no doubt this portion is necessary for public use. For this reason we have desired to support the proceeding in the court below if possible. It seemed as if it might be done under the general powers of the court to lay out and annul roads. But a closer examination discloses that this is a question of special authority, and not of general power. The authority of the court over state roads is clearly different from that over county roads, and it would lead to great confusion were we to attempt to eke out the former by a resort to the latter. A state road is a highway laid out by the direct authority of the state, generally between distant places, and through different counties, to supply a want felt by a large district of country, and which the diversity of local interests is not always willing to supply. It being a creature of special legislation the proceedings to locate, and often the repair and regulation of the road itself, are provided for by the special terms of the act. There is often a great variety in these terms, just as the views of the draftsman of the act, or the special circumstances of the case, may dictate. Hence it is not easy to reduce the system of state roads to uniformity. In consequence of this, and also to prevent local interests and feelings from strangling a state road, or turning it into a *cul de sac*, the only power committed to the Court of Quarter Sessions is " to *change* or *supply* by a new road the route of any state road which may be laid out by direction of any Act of Assembly within their respective counties, and thereupon to vacate *so much* of such state road as *shall be supplied*."

The power to change or supply by a new road was evidently given to correct mistakes in the original location, and to allow of deviations resulting from accidents, but not otherwise to interfere with the road, either by cutting it asunder, or multiplying its parts. It may, therefore, be changed and supplied at any point by means of a new route, but when this is done it is evident the old route gives place to the new, and the new becomes the state road, and not an independent county road. If the new route were but a county road, it might be vacated by the court, and thus the state road which had been severed by the new route turned into a *cul de sac*, and the interest of distant places defeated by the local opposition. It is evident also that the legislature did not intend in this authority over state roads to give the power to multiply them. The court may change and supply, but not create a second road. If it could lay out a new route between distant points in the county and leave all of the old route standing except some insignificant part, it might repeat the process until

[Penn Township Road.]

the multiplication of the parts of the state road would become so great it would be difficult to determine how many or how much were the state road. If the part of the state road supplied or a portion of it can be left to stand, it must continue to be a state road governed by the law of its creation, and cannot be vacated except by again supplying a new route. This repeating process upon unvacated portions of the part supplied is clearly contrary to the intent of the law. The principle of the thing as to changing and supplying a new route is well stated in a different case by Lewis, C. J., in Mill Creek Township *v.* Read, 5 Casey 197: " The authority to alter a road (he says) is an authority to substitute a new road for an old one, and whenever this is done, the old road so far as it is supplied by the new one is vacated." The county road system is different from that of the state. In the former the viewers may vacate parts only of the old road, and so return to the court: Loretto Road, 5 Casey 350. Looking, therefore, at the character of a state road as a creature of special legislation, the restraint upon the authority of the court, and the reason for this limitation of power, it is evident we must construe as mandatory the clause in the act " to vacate so much of such state road as shall be supplied."

The order of confirmation of the Court of Quarter Sessions is therefore reversed and modified as to so much of the Frankstown state road as was not vacated by the viewers, and it is ordered that the entire state road between the terminal points supplied by the new route laid out by the viewers, shall be vacated, and the report of the viewers laying out the new route to supply the same confirmed.

It may be added that there is nothing to prevent the court from laying out a new county road over that part of the state road which the views did not vacate.

Order and decree as above stated.