Turkey Run Fuels, Inc. Appeal.

Argued October 3, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*Richard W. Ledwith,* with him *Roy P. Hicks, James
D. Williamson, Hicks, Williamson & Friedberg,* and
*MacCoy, Evans & Lewis,* for appellant.

*John Justus Bodley,* with him *James P. Bohorad,*
for appellee.

OPINION BY RENO, J., March 17, 1953:

Appellant petitioned the court below "to appoint
a Board of View to inquire into the expediency of
vacating" a part of a road in the Borough of Shenandoah which crosses appellant's premises, the part to
be vacated lying wholly within the Borough. The
viewers, appointed pursuant to the petition, found:
"Said road is inconvenient, unnecessary, useless and
would be burdensome to maintain", and reported: "we
vacate the road described" by metes and bounds. The
Borough had not consented to the vacation and upon
that ground excepted to the report. The court below
sustained the exceptions and this appeal followed.

The petition relates to a part of the road which was
originally a *state road,* laid out under the Act of March
28, 1848, P. L. 279, extending from Berwick, Columbia
County, to Pottsville, Schuylkill County, and passing
through Shenandoah. The viewers found "that said

state road . . . was subsequently incorporated into the state highway system . . . and was designated as State Highway Route No. 464, Section 1, and Traffic Route 142".[1] In 1949 the road was relocated by the Department of Highways and, as a result, that section of the road which passes through appellant's property is no longer used as a state highway. The points at which the superseded road diverts from and reunites with the new highway are not shown on the map or described in the testimony.[2] Nor are the termini of the *superseded* road shown or described but one terminus is certainly within the Borough where it connects with and forms a part of the Borough's integrated system of streets and the other terminus is in either Maizeville or Gilberton which are located west of Shenandoah.

The State Highway Law of June 1, 1945, P. L. 1242, §210, as amended, 36 P.S. §670-210, provides in part: "The secretary is hereby empowered to change, alter, or establish the width, lines, location, or grades of any State highway or any intersecting road in any township, borough, or incorporated town, in such manner as, in his discretion, may seem best, in order to correct danger or inconvenience to the traveling public, or lessen the cost to the Commonwealth in the construction, reconstruction, or maintenance thereof. After the relocation has been opened to traffic, the secretary, by

---

[1] The Act of April 8, 1925, P. L. 191, §1, 36 P.S. §1440, adopted certain roads as Route 464. Maizeville and Shenandoah are mentioned therein but the ultimate termini are not stated. The highways which are mentioned in the Act as connecting highways may extend to Berwick and Pottsville.

[2] Had appellant complied with the Act of April 23, 1909, P. L. 142, §1, 36 P.S. §1922, requiring petitioners for vacation of roads to "fix definitely the point of beginning and the point of ending . . . by giving the exact distance from an intersecting public road . . ." the termini of the superseded road could have been located with precision.

notice to the local authorities, shall abandon as a State highway route or vacate the section of highway between the termini of the relocation. . . . Thereafter the part so vacated shall be closed to public use and travel, and shall no longer be a public road." Quite properly, as will appear, the secretary took no action under this provision. He did not formally abandon or vacate the superseded highway or notify the local authorities of an abandonment or vacation, and the road remains open and is used for public travel.

There is a statement in the record that the Pennsylvania Public Utility Commission entered an order "which authorizes and contemplates a vacation", and the viewers found: "That on or about July 26, 1949, said State Highway Route No. 464, Section 1, was relocated by the Department of Highways of the Commonwealth of Pennsylvania, in the Borough of Shenandoah, following a hearing before the Pennsylvania Public Utility Commission, re A. 71608." The report and order of the Commission were not introduced in evidence. Its jurisdiction may have been invoked because of railroad crossings over or under the superseded highway. Howbeit, appellant's counsel, referring to the Commission's order, frankly stated to the viewers: "But no formal action looking to a vacation was actually taken until the petition was presented in this proceeding." We assume, therefore, that the case is not complicated by prior action of the Commission.

Appellant invoked the jurisdiction of the Court below under the State Highway Law, supra, §215, 36 P.S. §670-215, which provides: "The courts of quarter sessions shall have power to inquire of and vacate any part or parts of any *former State road* or turnpike road which has been adopted as a State highway, where such part, or parts thereof, due to the change or relocation of the State highway, no longer form a part

of such State highway. Such vacation shall be in the same manner as in the case of the vacation of roads under the general road law." (Emphasis added.) When this section is compared with §210, supra, a manifest variance immediately appears. Both deal with the vacation of superseded state highways, but the power to vacate is committed to different functionaries and relates to dissimilar classes of roads. The secretary is authorized by §210 to change the location "of any State highway or any intersecting road in any township, borough or incorporated town", and as an incident to such relocation to abandon or vacate "the section of highway between the termini of the relocation." This is a general provision and must be contrasted with the special provision in §215 which authorizes quarter sessions courts to vacate "parts of any *former State road* . . . which has been adopted as a State highway", which by reason of a relocation "no longer form a part of such State highway." (Emphasis added.) Thus the general authority of the secretary to vacate *all roads* that have been relocated obviously conflicts with the specific authority of the quarter sessions to vacate *state roads* which by relocation are no longer a part of a State highway. Where a specific provision follows a general provision in the same statute, the specific provision prevails and is construed as an exception to the general provision. Statutory Construction Act of May 28, 1937, P. L. 1019, §63, 46 P.S. §563. *Waits' Estate*, 336 Pa. 151, 7 A. 2d 329; *Kolb v. Reformed Episcopal Church*, 18 Pa. Superior Ct. 477; *Com. v. Shimpeno*, 160 Pa. Superior Ct. 104, 50 A. 2d 39.

By enacting §215, supra, the 1945 General Assembly clearly proclaimed its intention to preserve *state roads* as a separate category, distinct from state highways and county and township roads, a special position they

had occupied in the law for fully a century and a half. In *Penn Township Road,* 66 Pa. 461, 463, Mr. Justice AGNEW explained their legislative status and defined state roads: "The authority of the court over state roads is clearly different from that over county roads, and it would lead to great confusion were we to attempt to eke out the former by a resort to the latter. A state road is a highway laid out by the direct authority of the state, generally between distant places, and through different counties, to supply a want felt by a large district of country, and which the diversity of local interests is not always willing to supply." See also *State Road from Phoenixville to the Trappe,* 52 Pa. 161. These judicial decisions were based upon various acts which limited the general powers of the courts in respect of state roads. Thus, the General Road Law of June 13, 1836, P. L. 551, treated state roads as a separate class by authorizing the quarter sessions courts to alter their routes within specified limitations (§18, 36 P.S. §1981) and to vacate parts of them which had been supplied by turnpikes (§21, 36 P.S. §1983). Not until after the enactment of the Act of May 7, 1925, P. L. 554, 36 P.S. §1984, were the courts granted unlimited authority to widen, alter, or vacate state roads.[3] Section 21 of the Act of 1836, supra, was amended by the Act of April 22, 1937, P. L. 393, 36 P.S. §1983, by authorizing the courts "to inquire of and vacate any part or parts of any former state road . . . which was adopted as a State highway, where such part, or parts thereof, due to the change or relocation of the State highway, no longer form a part of such State highway." The identical verbiage of this provision was re-enacted by §215 of the State

---

[3] See also the following Acts: May 22, 1871, P. L. 272, 36 P.S. §2261; May 23, 1878, P. L. 102, 36 P.S. §§2262-65.

Highway Law and the Act of 1937 was specifically repealed. Id. §1101.

The irresistible conclusion is that state roads remain a separate category under the State Highway Law, that as to them the Secretary of Highways is without power to abandon or vacate them when they are supplanted by a relocated state highway, and that the quarter sessions courts possess exclusive jurisdiction to vacate state roads when they no longer form a part of a state highway.

The Borough bases its opposition to the vacation upon The Borough Code of July 10, 1947, P. L. 1621, §46, 53 P.S. §§13591-2, which provides: "All streets *partly* within a borough, *where one of the termini of such street is without the borough,* shall be laid out, widened, changed or vacated only by the court of quarter sessions in the manner provided by the general road law and the amendments, additions and supplements thereto. No such street shall be opened, changed, widened, altered or vacated unless and until the council of the borough shall have passed a resolution consenting thereto and shall have filed a certified copy thereof with the clerk of the court of quarter sessions." (Emphasis added.) As stated, the consent of the Borough was not secured, and contending that the road is a borough street it relies, inter alia, upon the cogent statement of Mr. Justice WOODWARD in *Vacation of Osage Street,* 90 Pa. 114, 117: "The vacation of a single street could be at a point so vital as to derange the graduation, drainage and sewerage of an entire borough. Legislation should be very clear indeed to require that the health, convenience and comfort of a whole community should be put to the hazard of the action of six [three] gentlemen casually selected from country townships, adjacent to a town, to deal with

an isolated detail of a system which they could touch only to injure and perhaps destroy."

At one time appellant admitted that the road was a borough street. In its petition for viewers it averred: "The abandonment of the said portion of the road resulted in returning to the Borough of Shenandoah as a borough road or street what was once State Highway Route No. 464, Section 1, Traffic Route 142." Upon appellant's motion *the viewers* allowed it to amend its petition by deleting that averment. Obviously the viewers were not legally competent to permit an amendment to a petition addressed to the court, without the sanction of the court. However, the averment was at most a legal conclusion and its emendation is harmless error.

Appellant's prime contention is that, viewing the road as a whole, it is a public highway extending from Berwick to Pottsville and although it is partly within the Borough, *both, not only one,* of its termini are "without the Borough", that is, in Berwick and Pottsville. Upon that basis it argues that the Borough is without legal interest in the proceeding to vacate and that the cited section of The Borough Code does not apply. For this proposition it relies upon such cases as *Palo Alto Road,* 160 Pa. 104, 28 A. 649; *Curtis v. Pittsburgh, McK. & Y. R. R. Co.,* 250 Pa. 480, 95 A. 582; *Somerset and Stoystown Road,* 74 Pa. 61, and other lines. The cases are clearly inapposite in this factual situation. In *Palo Alto Road,* the borough did not oppose the vacation but, as appears at p. 107, "desire[d] and urge[d] its vacation." The other cases related to so-called *through* public highways which, having their termini elsewhere, passed through the municipalities. In the *Somerset* case, it was held that the quarter sessions possessed jurisdiction to order widen-

ing and straightening the portion of a highway lying in the Borough of Somerset which was laid out from Somerset to Stoystown. In the *Curtis* case the Borough of Connellsville attempted to vacate a portion of "a general thoroughfare leading into and out of the Borough", from Connellsville to Brownsville, and the Supreme Court held that power to vacate did not reside in the municipality but only in the quarter sessions.

These and cognate cases rest upon the principle, as enounced by Mr. Justice SHARSWOOD in the *Somerset* case, p. 64, that "a public road laid out and opened by order of the court under the General Road Law must be presumed necessary for the accommodation of the public at large, and not of the inhabitants of the borough only." In *McCall v. D. L. & W. R. R. Co. and Borough of Duryea,* 71 Pa. Superior Ct. 508, 513, KELLER, J., later P. J., speaking for this Court, reviewed the many relevant authorities, amplified the *Somerset* doctrine, and said: "No borough has authority, by vacating a portion of one of its streets, forming part of a long-established highway leading to other localities, to block or destroy the continuity of such highway. The people at large and outside of the borough have such an interest in the highway as to demand that no part of it be cut out or vacated without the assent of a court and jury of view". Nevertheless it was held, as stated in the second syllabus: "While a borough council has no authority to obstruct a main highway running through the borough, there is nothing to prevent its changing the location of a part of such highway which is entirely within its limits, where such change does not interrupt or destroy the continuity of the highway, but merely for safety or convenience substitutes a better or safer road for a dangerous and unsafe one."

Here we are not dealing with a through highway, with a road "presumed necessary for the accommodation of the public at large", with a road "forming part of a long-established highway leading to other localities." The "public at large" is now accommodated far better than before by the *relocated* highway, the substituted general thoroughfare which extends from Berwick to Pottsville and beyond both points. We are dealing with a *superseded* highway, no longer used by the traveling public generally[4] but mostly by "the inhabitants of the borough", a road which is a street "within the borough, where one of the termini of such street is without the borough", that is, in Maizeville or Gilberton. Although still physically joined with the relocated highway, the superseded highway is not now an essential link of the chain of state highways. Actually, it has been severed from that system and is now an independent but connecting highway.

Appellant, however, claims "that legally the highway in question is still a State Highway." This assertion is buttressed by contentions relating to provisions and definitions in The Borough Code and the State Highway Law. We shall not attempt to recite the ingenious and subtle argument. It defeats itself. For if the superseded highway is still a state highway it is a part of the highway system, and the jurisdiction of the quarter sessions court, which appellant invoked, attaches only where a part or parts of a former state highway "due to the change or location of the State highway, *no longer form a part of such State highway.*" Law, §215, supra. (Emphasis added.) Appellant can't have it both ways. If the road is still a part of the

---

[4] The viewers reported: "7. The [superseded] road has been replaced by a new macadam highway, properly graded of sufficient width, and said new road carries almost all of the traffic in that vicinity."

State highway system the court to which appellant presented its petition is without jurisdiction; if, however, it is shown by adequate proof that the superseded road is no longer a part of that system the court has power, with the concurrence of the Borough, to vacate it.

No question has been raised in respect of that part of the superseded highway which lies west of the boundary of Shenandoah and terminates in Maizeville or Gilberton. Vacation of the part of the road in Shenandoah would create a cul-de-sac which might prejudice the inhabitants of the area west of the Borough. Perhaps the Act of May 21, 1943, P. L. 458, §1, amending the Act of June 13, 1836, P. L. 551, §18, 36 P.S. §1981, applies but, while we have noticed the obvious implications, we express no opinion concerning that Act or the situation which might arise by closing part of the highway.

We hold only that the court below possesses exclusive jurisdiction to vacate the road, but since it is a street partly within the Borough of Shenandoah, and one of the termini is without the borough, the court is without power to order the vacation thereof "unless and until the council of the borough shall have passed a resolution consenting thereto and shall have filed a certified copy thereof with the clerk of the court of quarter sessions."

Order affirmed at appellant's costs.