## Camp Hill Borough Condemnation

*Edward Werblun*, Asst. Attorney General, *Jon F. LaFaver*, for Commonwealth.

*John E. Slike, Arnold & Slike*, for Borough of Camp Hill.

SHUGHART, P. J., August 4, 1967.—The Commonwealth of Pennsylvania, Department of Highways (hereinafter referred to as the Commonwealth), filed a declaration of taking in this court on December 14, 1966, wherein the Commonwealth condemned and appropriated certain lands owned by the Borough of Camp Hill for the purpose of constructing a bridge in connection with the relocation of Legislative Route 21015. The condemnation involves slightly less than two acres of borough property, less than one fourth of which was taken from existing borough street rights-of-way. The land taken is part of a recreation area known as Christian Siebert Memorial Park, and the area condemned is part of the frontage on the Conodoguinet Creek, which is the stream to be traversed by the proposed bridge.

The borough filed preliminary objections to the condemnation, and subsequently an answer to the preliminary objections was filed by the Commonwealth.

Following argument on the preliminary objections, a hearing was fixed for the purpose of taking testimony on certain matters raised in the objections. Testimony was taken at a hearing held May 4th, briefs were subsequently filed and the matter orally argued before the writer on July 26, 1967.

The principal issues raised by the preliminary objections are that the Commonwealth, through the Secretary of Highways, lacks the power to condemn public land of the borough; and, secondly, even if it does possess the power, the Secretary of Highways, in choosing the proposed location for the bridge, acted in such an arbitrary and capricious manner as to make the condemnation unlawful.

The power of eminent domain is one of the essential incidents of sovereignty: Lock Haven Bridge Co. v. Clinton County, 157 Pa. 379, 389. No appellate decision has been cited nor has our own research revealed any in which it has been specifically held that the Commonwealth possessed the authority to acquire by eminent domain proceedings property owned by a municipal subdivision. On the other hand, by necessary implication, our Supreme Court has so held, in the case of Speers Borough School District v. Commonwealth, 383 Pa. 206. In that case, the Commonwealth acquired through condemnation for highway slope purposes, a portion of land owned by a school district. The Commonwealth contended that it was under no duty to pay compensation to the school district, because the latter was merely an agency of the State which was holding its property in a public or governmental capacity and, as such, could receive compensation only as a matter of grace and not of right, and that the act in question did not confer the right to compensation. The court pointed out that article I, sec. 10, of the Constitution of Pennsylvania

prohibited taking of *private* property without compensation, and stated that it has always been held that the Commonwealth may take property of a political subdivision or agency without payment therefor. The court held that the school district, under the statute in question, was entitled to be compensated for the taking.

It is true, as argued by counsel for the borough, that in the case of Chester County Institution District v. Commonwealth, 341 Pa. 49, cited in the Speers case, the legislature had expressly authorized the appropriation of property of the county institution districts. He argues, therefore, that this case must be authority only for the proposition that the legislature may specifically authorize such acquisition, and that there was no such authorization here. While the right of the Commonwealth to condemn the school district property was not discussed in the Speers case, the court, of necessity, determined that such right existed in order to reach the question of the condemnees' compensation therefor. We, therefore, conclude that the Speers case is authority for the right of the Commonwealth to condemn public property.

There are situations in which the legislature has exempted certain property from condemnation. The Act of April 5, 1849, P.L. 397, sec. 1, 9 PS §8, provides, in substance, that it shall not be lawful to open any street or public road through any burial ground or cemetery within the Commonwealth. It has been held that this statute is binding upon the Commonwealth and prohibits the Commonwealth from condemning such land for highway purposes: Interstate Cemetery Company Appeal, 422 Pa. 594. Likewise, by the Act of May 10, 1907, P. L. 196, no. 156, sec. 1, 26 PS §191, condemnation by corporations of land now occupied by any building which was used during the Colonial or Revolutionary period is prohibited. By virtue of other

statutes, certain kinds of lands have been exempted from condemnation under the power of eminent domain. See 13 P.L. Encyc., Eminent Domain, §9. It appears, therefore, that when the legislature has sought to exempt certain property from condemnation, it has always so provided by statutory enactment. There is no such statutory exemption of lands owned by municipalities, whether or not those lands are devoted to public use. We conclude that the absence of a specific authority in the Act of June 1, 1945, P. L. 1242, sec. 210, 36 PS §670-210, to condemn public property for the construction of the bridge does not prohibit the condemnation of the borough property involved here.

This holding is consistent with the general rule:

"In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor.

"If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the 'res' as public property, generally, has no inhibiting influence upon the exercise of the power": Nichols Em. Dom. Supp. §2.2.

There is no doubt that the United States has the power to take lands already devoted to public use in the exercise of its constitutional powers: United States v. Carmack, 329 U. S. 230, 67 S. Ct. 252, 91 L.Ed. 209. The State has no less authority.

"The sovereignty over the lands of the State was originally more in the State than in the United States. The United States only acquired such as the States conceded to it. All other sovereignty remained in the State and therefore, if the doctrine heretofore stated that one subordinate sovereignty cannot take from

another subordinate sovereignty without specific legislative grant property which has been applied to a prior public use has no appplication to the United States it certainly has none to the State when acting in its sovereign capacity": East Deer Township School Dist. v. Van Dyke, 34 D. & C. 712, 716 (1937).

The various Pennsylvania cases cited by counsel for limitation on the authority to condemn public property involve condemnors other than the Commonwealth itself except the decision in Pgh. & W. Va. Rwy. Co. v. Stuart, Secretary of Highways, 77 Pitts. L. J. 287 (1929), which is not binding upon us. For a collection of Pennsylvania cases, see 1 Nichols, Em. Dom. Supp. §2.2, footnote 52.

The Secretary of Highways, when performing the duties imposed upon him by the Act of 1945, supra, is acting as the direct agent of the State. He, therefore, possesses the power to condemn the property in question. This same conclusion was reached in East Deer Township School Dist. v. Van Dyke, supra.

The borough offered testimony that there were at least three possible sites for the erection of a bridge over the Conodoguinet Creek in the general area. The first was the site of the previous bridge which was destroyed by fire some years ago, and which was approximately one-half mile upstream from the site of the bridge proposed by the Commonwealth. The second site would be the site selected by the Commonwealth. The third is a site proposed by the borough.

Testimony was offered by the borough that erection of the bridge as proposed by the State will obstruct approximately 480 of the 580 feet of creek frontage of the park. While this frontage will be traversed by the abutments to the bridge, it appears that the area under the bridge will be available for access to the creek by pedestrians as well as vehicles. It cannot be doubted, however, that the construction of the bridge

at the proposed location would have an adverse effect on the scenic development of the park.

Access to one end of the proposed bridge would be through the intersection of North Twenty-First Street and Cumberland Boulevard. This is a very congested intersection at present and one at which there have been numerous accidents. On the other hand, if the site suggested by the borough were employed, the access to the bridge would be obtained from Erford Road, which, in turn, connects with the continuation of Cumberland Boulevard by means of a cloverleaf, thus permitting a freer flow of traffic than through the North Twenty-First Street intersection.

In the past, some of the homes on Conodoguinet Drive which runs along the creek have been threatened by both ice and floodwater from ice jams which have occurred in the creek at the location of the bridge proposed by the Commonwealth. Witnesses have testified that the erection of piers in the bed of the creek will increase the danger of ice jams if the bridge is built.

If the bridge is built as planned by the State, Creek Road which runs along the Conodoguinet Creek will be closed off at its Twenty-First Street terminus, leaving the road as a dead-end street.

Testimony was also offered that the erection of the bridge as proposed will increase the flow of storm water into a drainage ditch through one of the adjoining properties, which ditch is already overloaded and, additionally, the bridge will require relocation of certain borough sewer lines.

Some time prior to the hearing, and while negotiations were being carried out between the borough and the Highway Department, William D. Whittock, the borough engineer, by the use of maps and an examination of the sites, made what he called a preliminary study, and on the basis thereof submitted a plan to

the borough for an alternate location of the bridge. It appears that this plan had been submitted by the borough to the Department of Highways. It is apparent that this alternative plan was not accepted. In considering the plans for the site proposed by the Commonwealth and that submitted by the borough, it is noted that the former was a final plan prepared after a comprehensive study of the area, whereas the plan of the borough was preliminary only. It is equally apparent that testimony with respect to elevations, grades, and possible costs involving the two sites must be regarded as rough estimates only.

It is from this testimony that we must determine whether the action of the Secretary of Highways in the selection of the site which would require the acquisition of some of the borough park property was fraudulent, arbitrary or capricious and, therefore, subject to restraint. No evidence was submitted that could conceivably result in a finding of any fraud, and we must direct our attention to a determination whether the action was arbitrary or capricious.

In Washington Park, Inc., Appeal, 425 Pa. 349, the Secretary of Highways, as in this case, condemned land under the statutory authority contained in the Act of June 1, 1945, P. L. 1242, sec. 210, 36 PS §670-210. There, as here, preliminary objections were filed to the eminent domain proceeding, on the ground that the Secretary of Highways had acted improperly. In that case, Justice Roberts, in speaking of the authority of the court in such cases, said:

"We have no power to substitute our discretion for his, nor to correct mistaken judgments. Furthermore, it is presumed that the highway department's officials have performed their duties in good faith; the burden upon the appellant to prove the contrary, that the officials acted in a capricious, or fraudulent manner, or that their actions were based upon private motives

inconsistent with the public welfare, is a heavy one. See, e.g., Crawford v. Redevelopment Auth., 418 Pa. 549, 553-54, 211 A. 2d 866, 868 (1965) ; Blumenschein v. Pittsburgh Housing Auth., 379 Pa. 566, 570-74, 109 A. 2d 331, 333-35 (1954) ; Robb v. Stone, 296 Pa. 482, 146 Atl. 91 (1929) ".

Ballentine's Law Dictionary, 2d ed., defines an arbitrary decision by an official as one which is "based upon the will of the officer alone and not upon any course of reasoning and exercise of judgment". Webster's New World Dictionary defines "arbitrary" as "based on one's preference, notion, or whim; capricious; absolute and despotic". "Capricious" is variously defined as "erratic, flighty, unpredictable".

We must start with the proposition that the Highway Department officials are presumed to have performed their duties in good faith. It is apparent also that their planning for the bridge was based on a study in depth rather than a preliminary study such as produced the borough plan. If the testimony produced by the borough is accepted in all respects, it would seem that the Highway Department officials may have made a mistake in their judgment as to the site for the bridge. This, however, is insufficient to set aside their decision. If the action of highway officials could be subjected to a challenge in court for errors of judgment honestly made, there is little doubt that the construction of the much-needed highway system would be seriously impeded: Condemnation of Right of Way in Greencastle Borough, 37 D. & C. 2d 575. We cannot find from the testimony presented that the action of the secretary has been based on his will rather than upon the exercise of his judgment. It is, therefore, not arbitrary. Likewise, although the decision may have been erroneous, it was not freakish or whimsical, and it was, therefore, not capricious.

Park X. Martin, the former Director of the Pittsburgh Renaissance and former Secretary of Highways for the Commonwealth from 1959 to 1963, and presently a member of the Cumberland County Planning Commission, testified in behalf of the borough's desire to have the site of the bridge changed. This distinguished gentleman perhaps best summed up the controversy over the bridge site when he said, "Based on strict engineering decisions, I wouldn't quarrel with the State's location. I think it is engineered all right. But I would not have gone through the Borough Park property".

Obviously, there are serious differences of opinion as to the site for the erection of the bridge in question. There is no basis, however, for a finding that the selection of one site over the other constitutes arbitrary or capricious action.

Originally it was contended that the Commonwealth had appropriated a portion of a cemetery, which would be contrary to the provisions of the Act of 1849, supra. As we indicated at oral argument, we are not satisfied that any portion of the cemetery was involved in the condemnation, and, therefore, this objection cannot be sustained.

The borough also contends that the Act of 1945 does not confer the power upon the Secretary of Highways to condemn a part of a borough's street so that the street is without access at one end and that, by the present condemnation, Creek Road is terminated. In support of this contention, the case of Turkey Run Fuels, Inc., Appeal, 173 Pa. Superior Ct. 76, is cited. In that case the State Highway Department relocated a highway, and as a result a section of the road which passed through the appellant's property was no longer used as a State highway. The one terminus of the road was within the Borough of Shenandoah where it connected with and formed a part of the borough's in-

tegrated system of streets. The appellant was the owner of the property on each side of the severed portion of the highway and he sought to have the road vacated. The court refused and referred to the authority of the borough to control the vacation of streets, partly within the borough, under the Borough Code of July 10, 1947, P. L. 1621, sec. 46, 53 PS §13591-2.

The Turkey Run case is no authority for the proposition that the Secretary of Highways may not condemn land so as to terminate a street. In fact, that is exactly what happened in the Turkey Run Fuels case; the relocation did effect a termination of the street. The decision holds, however, that the terminated street cannot be vacated or abandoned except pursuant to the provision of the Borough Code.

The Borough of Camp Hill has offered considerable evidence to show that the site selected by the Highway Department was not wise. It is abundantly clear, however, that the selection of the site was not done in an arbitrary or capricious manner and, therefore, the preliminary objections to the condemnation must be dismissed.

ORDER OF COURT

And now, August 4, 1967, for the reasons set forth in the foregoing opinion, the preliminary objections to the condemnation proceedings referred to in the caption are overruled and dismissed. An exception is noted.