MAYOR AND CITY COUNCIL OF BALTIMORE,
ET AL. *v.* THE CONCORD BAPTIST
CHURCH, INC., ET AL.

[No. 235, September Term, 1969.]

*Decided March 3, 1970.*

134

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*George L. Russell, Jr., City Solicitor*, and *Howard E. Wallin, Assistant City Solicitor*, with whom was *Ambrose T. Hartman, Deputy City Solicitor*, on the brief, for appellants.

*Charles C. W. Atwater*, with whom were *Mylander & Atwater, David A. Carney* and *Henry Glick* on the brief, for The New Union Baptist Church, Inc., one of appellees; *George F. Flentje, Jr.* on the brief, for The Maryland Synod of the Lutheran Church in America, another of appellees; and *Robert L. Sullivan, Jr.* and *Jan K. Guben* on the brief, for The Calvary Baptist Church, another of appellees.

*E. Stephen Derby*, with whom was *William L. Marbury* on the brief, for The Convention of the Protestant

Episcopal Church of the Diocese of Maryland, another of appellees.

*Charles J. Josey* for The Concord Baptist Church, Inc., another of appellees.

Submitted on brief by *Francis X. Gallagher* and *Joseph G. Finnerty, Jr.* for Lawrence Cardinal Shehan, Roman Catholic Archbishop of Baltimore, another of appellees.

SINGLEY, J., delivered the opinion of the Court.

Aware of the unique difficulties inherent in the condemnation of church structures,[1] the General Assembly enacted § 9A 1 (b) of Chapter 804 of the Laws of 1945.[2] The provision survives, after a substantial modification made by Chapter 52 of the Laws of 1963 as Maryland Code (1957, 1967 Repl. Vol.) Art. 33 A § 5 (d) (the Act) :

> "*Churches*—The damages to be awarded for the taking of a structure held in fee simple, or under a lease renewable forever, by or for the benefit of a religious body and regularly used by such religious body as a church or place of religious worship, shall be the reasonable cost

---

1. See Baker and Altfeld, "Maryland's New Condemnation Code" 23 Md.L.Rev. 309, 319-320 (1963) and Maryland Legislative Council Report (1963) at 285.
2. "§ 1 * * * (b) Whenever State, county or city authorities, or their agents, shall for any public purpose or purposes have the right to acquire, or proceed by the power of eminent domain to acquire, property that is used as a church or place of worship, the Jury, in assessing damages for said church or place of worship so acquired or to be acquired, shall take into consideration, in addition to the fair value of the church or place of worship so condemned, the difference between the fair value of the church or place of worship condemned and the cost of erecting or constructing a new church or place of worship of substantially the same size, type, design and character of construction as the structure condemned at some other suitable or comparable location within the State of Maryland to be provided by the authorities of the structure condemned."

as of the valuation date, of erecting a new structure of substantially the same size and of comparable character and quality of construction as the acquired structure at some other suitable and comparable location within the State of Maryland to be provided by such religious body. Such damages shall be in addition to the damages to be awarded for the land on which the condemned structure is located."

This case challenges the constitutionality of the Act.

In 1967, the Mayor and City Council of Baltimore (the City), faced with the necessity of acquiring two church properties for the construction of Interstate Route 70 N, instituted two condemnation proceedings in the Superior Court of Baltimore City: one against The Concord Baptist Church, Inc. (Concord) for the taking of its church property at 901-907 West Franklin Street and another against The New Union Baptist Church, Inc. (Union) for the taking of its church at 413-415 North Schroeder Street.

Filed with the petitions of condemnation in each case was a stipulation in which the parties agreed upon the fair market value of the property being taken ($115,000 in Concord's case; $50,000, in Union's) and upon the amount of damages which they arrived at under the Act ($159,650 in Concord's case; $125,000, in Union's). The City deposited in court in each case the smaller of the two amounts, which the churches, under the stipulation, were permitted to withdraw. The stipulation further provided that the constitutionality of the Act would be submitted for judicial determination, and that should the Act be found invalid, the churches' recovery would be respectively limited to fair market value. In the event that the Act were upheld, the parties agreed that the City would pay to each church the difference between fair market value and the amount of damages which the parties arrived at under the Act.

The City then moved for the consolidation of the Con-

cord and Union cases and for trial of the legal issue of constitutionality. This produced a bumper crop of pleadings upon which we need touch only lightly. The Convention of the Protestant Episcopal Church of the Diocese of Maryland; Lawrence Cardinal Shehan, Roman Catholic Archbishop of Baltimore, and the Maryland Synod of the Lutheran Church in America (the Intervenors) were permitted to intervene and were appellees before us. The case was tried in February 1968, and was held sub curia.

About a month after the hearing, the City instituted proceedings against Calvary Baptist Church (Calvary) for the condemnation of the church property at 556-560 West Biddle Street. The parties entered into a stipulation similar to that used in the Concord and Union cases, except that there was no agreement as to the amount of damages which would be arrived at should the Act be upheld. On the City's motion, the Calvary case was consolidated with the Concord and Union cases.

At this stage of the matter, the City, Charles L. Benton, individually and as the City's Director of Finance, and Hyman A. Pressman, individually and as the City's Comptroller brought a declaratory judgment proceeding against Concord, Union, Calvary and the Intervenors, in which they sought to have the Act declared unconstitutional, and later moved to have the declaratory judgment action consolidated with the condemnation cases. When an order staying the declaratory judgment case was signed, but never entered, Messrs. Benton and Pressman moved in their official capacities to intervene in the condemnation cases.

On 21 May 1969, the court below entered an order rescinding the stay of the declaratory judgment action; consolidating the declaratory proceeding with the condemnation cases; permitting Mr. Benton and Mr. Pressman to intervene in the condemnation cases; denying Concord's motion to dismiss which had averred that the City lacked the standing to raise the issue of constitutionality; and finally, holding the Act to be constitutional and the churches to be entitled to damages determined (in Cal-

vary's case, to be determined) in accordance with the Act.

The City and Messrs. Benton and Pressman took an appeal, urging that the Act should have been declared unconstitutional because it imposes an unreasonable limitation on the State's right of eminent domain and violates the Fourteenth Amendment to the Constitution as well as Articles 19 and 23 of Maryland's Declaration of Rights and the Establishment Clause of the First Amendment.

Concord, Union and the Intervenors have cross appealed, assigning as error the lower court's failure to grant Concord's motion to dismiss for want of standing, in which those appellees had joined.

## (i)

### Standing

The lower court found that Concord, Union and Calvary, by entering into the stipulations, had, in effect, submitted the constitutional issue for decision. Entirely apart from this, however, Messrs. Benton and Pressman had sought declaratory relief and had later intervened in their individual and official capacities, as the City officials charged with the duty of acquiring property and paying for it. Theirs was the dilemma faced by public officials "either in refusing to act under a statute [they] believe to be unconstitutional, or in carrying it out and subsequently finding it to be unconstitutional," recognized in *Pressman v. State Tax Comm'n*, 204 Md. 78, 102 A. 2d 821 (1954) and in *Board of Education v. Allen*, 392 U. S. 236, 88 S. Ct. 1923, 20 L.Ed.2d 1060 (1968). See also, Borchard, *Declaratory Judgments* (2d Ed. 1941) at 771. Additionally, where the issues presented are of great public interest and concern, the interest necessary to sustain standing need only be slight. *Horace Mann League v. Board of Public Works*, 242 Md. 645, 653, 220 A. 2d 51, *cert. den.* 385 U. S. 97, 87 S. Ct. 317, 17 L.Ed.2d 195 (1966); *Baltimore Retail Liquor Package Stores Ass'n v. Board of License Comm'rs*, 171 Md. 426, 189 A. 209

(1937) ; see also *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 (1950).

In holding that the individual appellants had standing, we are not overlooking the principles that the City, as a creature of the State, possesses no power which it may invoke against the State, even on constitutional grounds, *Duvall v. Lacy,* 195 Md. 138, 73 A. 2d 26 (1950) ; *Williams v. Mayor & C. C. of Baltimore,* 289 U. S. 36, 53 S. Ct. 431, 77 L. Ed. 1015 (1933) ; *United States v. Railroad Co.,* 84 U. S. (17 Wall.) 322, 21 L. Ed. 597 (1873), but compare *Gomillion v. Lightfoot,* 364 U. S. 339, 81 S. Ct. 125, 5 L.Ed.2d 110 (1960), and may have even less right to challenge the constitutionality of a statute under which it is proceeding. *Creative Country Day School v. Montgomery County Bd. of Appeals,* 242 Md. 552, 568, 219 A. 2d 789 (1966). Nor are we unmindful of the contention that a claim of unconstitutional discrimination may be asserted only by a person discriminated against. *Simpson v. Bd. of Appeals for Montgomery County,* 218 Md. 222, 146 A. 2d 37 (1958).

We conclude that there is no reason why Concord's motion to dismiss should have been granted.

(ii)

The Constitutional Issue

If the Act were to be interpreted as the City and the lower court construed it, *i.e.,* as requiring that the damages awarded be in an amount equivalent to the cost of reproduction or replacement of the improvements to which is to be added the value of the land, and paid only for church structures and not for other service properties, it may well be that grave constitutional issues would be raised both under the First Amendment (establishment of religion) and the Fourteenth Amendment (equal protection) to the United States Constitution and Articles 19 and 23 of the Maryland Declaration of Rights. It is conceivable that in most cases, an amount which exceeded fair market value could be paid to a church which would be under no duty to replace the facility condemned.

While it may be argued that a condemning authority may select certain property owners and pay them an amount in excess of fair market value, 4 Nichols, *Eminent Domain* § 12.1[3] (Rev. 3d Ed. 1962) at 32-33, such a classification, to be constitutionally permissible, must be reasonable, *Tatelbaum v. Pantex Mfg. Corp.*, 204 Md. 360, 370, 104 A. 2d 813 (1954), or within the limits of equity and justice, *Joslin Mfg. Co. v. Providence*, 262 U. S. 668, 677, 43 S. Ct. 684, 67 L. Ed. 1167 (1923), assuming the classification to be constitutional. We do not, however, accept the City's argument that the Act is an abridgment of the sovereign powers of the State. Compare *Lock Haven Bridge Co. v. Clinton County*, 157 Pa. 379, 27 A. 726 (1893) with *Heritage Realty, Inc. v. Mayor & C.C. of Baltimore*, 252 Md. 1, 248 A. 2d 898 (1969).

We do not read the Act as the City does, however. It is scarcely necessary to restate the principles here involved. There is a strong presumption of constitutionality, *State's Attorney for Charles County v. Triplett*, 255 Md. 270, 257 A. 2d 748 (1969); *Gino's of Maryland, Inc. v. Mayor & C.C. of Baltimore*, 250 Md. 621, 244 A. 2d 218 (1968); *A & H Transp. Inc. v. Mayor & C.C. of Baltimore*, 249 Md. 518, 240 A. 2d 601 (1968); *Deems v. Western Maryland Ry. Co.*, 247 Md. 95, 231 A. 2d 514 (1967); *Clark's Brooklyn Park, Inc. v. Hranicka*, 246 Md. 178, 227 A. 2d 726 (1967); *Pitts v. State Bd. of Examiners of Psychologists*, 222 Md. 224, 160 A. 2d 200, 81 A.L.R.2d 787 (1960) and if a statute may be construed in such a way as to avoid a conflict with the Constitution, we must adopt that construction. *Deems v. Western Maryland Ry. Co., supra; Stevens v. City of Salisbury*, 240 Md. 556, 214 A. 2d 775 (1965); *Hellmann v. Collier*, 217 Md. 93, 141 A. 2d 908 (1958). See also *Secretary of State v. Bryson*, 244 Md. 418, 224 A. 2d 277 (1966).

Maryland Constitution, Art. III § 40 prohibits the General Assembly from enacting any law authorizing the taking of private property without "just compensation." *Patterson v. Mayor & C.C. of Baltimore*, 127 Md. 233, 96 A. 458 (1915). The Fifth Amendment to the United

States Constitution provides that private property shall not be taken for public use without "just compensation"; and the Fourteenth Amendment makes this binding on the states. *Chicago, Burlington & Quincy R.R. Co. v. Chicago,* 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897); *Scott v. Toledo,* 36 F. 385, 1 L.R.A. 688 (6th Cir. 1888). Just compensation has long been equated with fair market value. *United States v. Miller,* 317 U. S. 369, 63 S. Ct. 276, 87 L. Ed. 336 (1943); *State Roads Comm'n v. Warriner,* 211 Md. 480, 485, 128 A. 2d 248 (1957); *Pumphrey v. State Roads Comm'n,* 175 Md. 498, 506, 2 A. 2d 668 (1938); *Consolidated Gas Elec. Light & Power Co. v. Mayor & C.C. of Baltimore,* 130 Md. 20, 30, 99 A. 968 (1917).

The expert witnesses produced below by the appellants and the appellees agreed that there are three avenues by which fair market value may be approached: (i) Capitalization of income; (ii) cost of replacing improvements, adjusted for physical and functional depreciation to which is added the fair market value of the land, and (iii) sales of comparable property. Cf. *Bergeman v. State Roads Comm'n,* 218 Md. 137, 140, 146 A. 2d 48 (1958) and cases there cited; 1 Orgel, *Valuation Under Eminent Domain* §§ 157, 176, 177 (2d Ed. 1953); 5 Nichols, *supra,* §§ 19.1, 20.1 and 21.1. In a given case, one approach may be more appropriate than another, and the less appropriate may be used as a check against the approach relied upon.

All of the experts below conceded that capitalization of income is an inappropriate approach and all save the City's expert agreed that comparable sales are virtually unavailable for use in the appraisal of church property. Church property, like the property of a school or non-profit hospital, is devoted to a service use, and income is either non-existent, or provides no reliable basis for appraisal. Moreover, service properties are seldom bought and sold in the willing seller — willing buyer context, which Code Art. 33 A § 6 adopts in its definition of fair market value.

As the Supreme Court said in *United States v. Miller, supra*: "Where, for any reason, property has no market, resort must be had to other data to ascertain its value * * *." 317 U. S. at 374, 63 S. Ct. at 280, 87 L. Ed. at 343; 2 Orgel, *supra*, § 190 at 17 puts it this way:

> "The lack of other and better evidence than reproduction cost has been especially prominent with respect to so-called service properties, such as schools, club-houses, and churches, where value to the owner is the accepted measure of compensation. We have already discussed these cases * * * and have pointed out that, in the absence of objective tests of value to the owner, the award is generally based on market value of the land plus cost of reproduction (depreciated) of the structures. *Occasionally it is based on the cost to the owner of replacing his entire property, land and structures, with an equally acceptable substitute—a measure rejected when market value is the assumed test of compensation.*" (Emphasis supplied).

If we read the Act, mindful of the fact that Code Art. 33 A restated and codified existing case law, *State Roads Comm'n v. Adams*, 238 Md. 371, 377, 209 A. 2d 247 (1965); *Duvall v. Potomac Elec. Power Co.*, 234 Md. 42, 197 A. 2d 893 (1964), which had been oriented to fair market value for many years, *State Roads Comm'n v. Warriner*, 211 Md. 480, 128 A. 2d 248 (1957), we cannot accept the interpretation given the Act by the City and the lower court, that it fixed damages as "replacement cost—new, plus land."

On the contrary, we think that a proper interpretation of the Act is that in the condemnation of church property, fair market value of improvements shall be arrived at by using the reproduction cost approach, taking into account the size, character and condition of the building being condemned, but without giving consideration to com-

parable sales except as they may affect land value.[3] Our conclusion is consistent with the Act's legislative history. As originally enacted Chapter 804 of the Laws of 1945, which appears in footnote 2, *supra,* directed the jury to take into account the difference between fair value and cost of reconstruction. This might well have called for "replacement cost — new, plus land" as the measure of damages.

To us, the language of the present Act "the damages to be awarded * * * shall be the reasonable cost as of the valuation date, of erecting *a new structure of substantially the same size and of comparable character and quality of construction* * * * (emphasis supplied), means the cost of reproducing or replacing the improvements, adjusted for physical and functional depreciation, to which shall be added the fair market value of the land. We must conclude that the legislative intent, as revealed by the Act, was to give to church property no benefit greater than that which would be accorded the owner of any other service property, despite the omission of other kinds of service property from § 5 (d).

> "Aside from serving as an upper limit to appraisals based on other methods of valuation, another important use for which the best appraisal authorities justify reproduction cost is in the case of so-called 'service properties', that are owned for nonprofit uses and that seldom come on to the market. Churches, club-houses, golf-courses, school and university buildings are of this nature. Neither their market value (if they have any) nor their value to their owners can be estimated by recent sales or by a capitalization of net earnings. In the absence of either of these more reliable tests of value, an appraiser can do little but add the structural costs

---

3. In *First National Realty Corp. v. State Roads Comm'n,* 255 Md. 605, 612, 258 A. 2d 419 (1969) we had occasion to point out that it was not until 1895 that comparable sales were admissible as evidence of value in a condemnation proceeding.

of the building to the market value of the vacant land, with some arbitrary deductions for physical and functional depreciation. The resulting figure ordinarily sets an upper limit to the worth of the property to the owner, and it roughly measures that value on the assumption that the owner would find it worth while to replace the structures with substantially identical ones in case they were destroyed. * * *" 2 Orgel, *supra,* § 188 at 4.

See also, 4 Nichols, *supra,* § 12.32 at 217-20.

Since the amounts to be paid Concord and Union were agreed upon by stipulation of the parties in the event that the Act were sustained, paragraphs 1 through 9 of the order of the Superior Court of Baltimore City are affirmed. Paragraph 10 is modified to read:

"The damages in the Calvary Baptist Church of Baltimore condemnation case shall be determined in accordance with Maryland Code (1957, 1967 Repl. Vol.) Art. 33 A § 5 (d) to be the reasonable cost of erecting a substantially similar church structure, adjusted for physical and functional depreciation, together with the fair market value of the land."

> *Order modified and as modified, affirmed. Costs to be paid by appellants.*