481 A.2d 785

STATE of Maryland, ex rel., ATTORNEY GENERAL et al.

v.

BURNING TREE CLUB, INC.

No. 138, Sept. Term, 1983.

Court of Appeals of Maryland.

Oct. 2, 1984.

10

Diana G. Motz and Robert A. Zarnoch, Asst. Attys. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kaye B. Bushel and Linda H. Lamone, Asst. Attys. Gen., Baltimore, on brief), for appellant.

Benjamin R. Civiletti, Baltimore (J. Phillip Jordan, Leslie A. Vial, James A. Dunbar and Venable, Baetjer & Howard, Baltimore, and David Macdonald, Rockville, of counsel, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

SMITH, Judge.

We shall here hold that the Attorney General of Maryland could not bring a declaratory judgment action challenging the constitutionality of an enactment of the General Assembly of Maryland.

## I

Proclaiming in its preamble that it was "the intent of the General Assembly that the assessment of lands used for country clubs shall be maintained at levels compatible with the continued use of such property for country clubs and shall not be adversely affected by neighboring uses of a

more intensive and different nature" and that it is "in the general public interest that such uses should be encouraged in order to provide open spaces and provide recreational facilities and to prevent the forced conversion of such country clubs to more intensive or different uses as a result of economic pressures caused by the assessment of country club land and improvements at a rate or level incompatible with the practical use of such property for country clubs," the General Assembly, by Ch. 399 of the Acts of 1965, enacted a tax preference statute for country clubs. This provision is codified as Maryland Code (1957, 1980 Repl. Vol.) Art. 81, § 19(e). The statute authorizes the State Department of Assessments and Taxation "to make uniform agreements pursuant to th[at] subsection relative to the assessment and taxation of lands actively devoted to use as a country club as defined [t]herein." [1] Pursuant to such an agreement, but for an exception not pertinent to this case, "land which is actively devoted to use as a country club ... shall be assessed on the basis of such use for the period of time provided for in the agreement or any extension thereof and shall not be assessed as if subdivided or used for any other purpose." The period of time which such agreement may cover "shall be at the option of the country club but shall be not less than ten (10) consecutive years and may be extended from time to time."

In Ch. 870 of the Acts of 1974, the General Assembly amended § 19(e)(4) by inserting a provision to the effect that, in order to qualify for the exemption, a club "may not practice or allow to be practiced any form of discrimination

---

1.  The term "country club" is defined as
    "an area of land of not less than 50 acres, on which is maintained a regular or championship golf course of nine holes or more and a clubhouse, and which has a dues-paying membership of not less than 100 persons who pay dues averaging at least $50 annually per member, with the use of the club being restricted primarily to members, their families and guests, provided that the fact that the club facilities may be used by persons or groups other than members or their guests does not disqualify a club under this subsection." Art. 81, § 19(e)(4)(i).

in granting membership or guest privileges based upon the race, color, creed, sex, or national origin of any person or persons." The amendment further provided that the Office of the Attorney General should make the determination as to whether any club practices discrimination after affording a hearing to the club. Inserted in the statute in the process of its trip through the General Assembly was language which states that such provisions should not apply "to any club whose facilities are operated with the primary purpose, as determined by the Attorney General, to serve or benefit members of a particular sex, nor to the clubs which exclude certain sexes only on certain days and at certain times." In addition, the amendment to § 19(e)(4) provided that if the Attorney General determines that a pattern of discrimination is evident in any club, he shall negotiate a consent agreement with that club to cease such discrimination. If the club breaches or violates the consent agreement or refuses to enter a consent agreement, then the Attorney General shall issue a cease and desist order to that club. If the club breaches or violates the terms of the cease and desist order, the tax exemption shall be withdrawn until the Attorney General determines that the club is in compliance with the subsection.

Burning Tree Club, Inc., was founded in 1922 as a private, all-male golf club. It operates an eighteen hole golf course located on approximately 225 acres of land in Montgomery County. After § 19(e) was enacted in 1965, Burning Tree entered into a ten year agreement with the State Department of Assessments and Taxation in order to receive the tax preference. The agreement was extended for another ten year period in 1975. A new agreement covering a fifty year period was executed in 1980, following a determination by the Attorney General in 1978 that Burning Tree was operated to serve or benefit members of a particular sex and hence was exempt from the prohibition of sex discrimination contained in § 19(e)(4).

The Attorney General instituted a declaratory judgment action in the Circuit Court for Montgomery County in the

name of the State and on his own behalf as Attorney General. He sought to have declared unconstitutional that portion of the statute which provides the exemption for country clubs operated with the purpose of serving or benefiting members of a particular sex. He contended that this language is severable from the remaining portion of § 19(e)(4). Burning Tree filed a demurrer asserting that there is no actual controversy between the parties and thus the Court lacked jurisdiction over the case, that the Attorney General is without authority to bring the action, that the Attorney General lacks standing to bring the action, and that "[t]he Attorney General may not maintain this suit which conflicts with his duty to uphold the laws of the State and in which he has taken a position adverse to the interests of his statutory clients."

The trial judge (Sanders, J.) sustained Burning Tree's demurrer, stating in pertinent part:

"It is clear that the existence of a justiciable issue is an absolute prerequisite to the maintenance of a declaratory judgment action. A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded. The issue must present more than a difference of opinion, and in instances where constitutional rights are sought to be adjudicated, concrete and specific issues must be raised in actual cases rather than as theoretical or abstract propositions. *Gordon Hatt v. Mark Anderson,* et al., 297 Md. 42 [464 A.2d 1076] (1983).

"In the case at bar no controversy exists between plaintiffs and defendant. Pursuant to statutory authority, in 1965 and 1975, defendant and the State of Maryland entered into agreements whereby defendant received preferential property tax assessments, and, subsequently, in 1978, defendant was advised by the Attorney General of his determination that its facilities were operated with the primary purpose of serving or benefiting members of a single sex, thus exempting it from the prohibition of sex

discrimination contained in Article 81, Section 19(e)(4), Annotated Code of Maryland. Pursuant to these agreements and determination, defendant has enjoyed preferential tax treatment. It does not now complain to, nor has it any quarrel with, the tax assessing authority of the State of Maryland.

"It is usual that an attack upon the constitutionality of a statute relating to the collection of taxes is brought against that governmental agency vested with the authority to collect taxes, namely, the Maryland Department of Assessments and Taxation. At argument it was conceded by the Attorney General that he is precluded from filing this action against the Department of Assessments and Taxation since it is his statutory duty to defend that agency on behalf of the State of Maryland. Although he may in fact be thus precluded, this does not authorize the bringing of an action to declare a legislative enactment invalid against a party with whom he has no dispute.

"Based on the foregoing, the Court concludes that it has no jurisdiction to entertain this petition because it perceives no justiciable controversy. In view of the Court's holding in this regard, it need not decide the other issues raised by demurrer."

An appeal was entered to the Court of Special Appeals. We granted a writ of certiorari prior to hearing in that court in order that we might address the important public issues here presented.

## II

Burning Tree contends that the case is moot. Obviously, if it is moot we ordinarily order dismissal of the case, since, as we have observed in a host of cases, appellate courts do not sit to give opinions on abstract propositions or moot questions and appeals which present nothing else for decision are dismissed as a matter of course. *See, e.g., Hagerstown Repro. Health Serv. v. Fritz,* 295 Md. 268, 271–72, 454 A.2d 846, 848, *cert. denied,* —— U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1389 (1983); *Potts v. Governor,* 255

Md. 445, 449, 258 A.2d 180, 182 (1969), and cases cited in each. In *Attorney General v. Anne Arundel County Sch. Bus,* 286 Md. 324, 407 A.2d 749 (1979), the Court said, "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." 286 Md. at 327, 407 A.2d at 752. *Accord Maryland Tob. Grow. v. Maryland Tob. Auth.,* 267 Md. 20, 25–26, 296 A.2d 578, 580 (1972); *State v. Ficker,* 266 Md. 500, 506–07, 295 A.2d 231, 235 (1972); *Lloyd v. Supervisors of Elections,* 206 Md. 36, 39, 111 A.2d 379, 380 (1954).

Burning Tree's contention of mootness is based on the fact that there is pending in the Circuit Court for Montgomery County another case "addressing virtually all of the significant issues raised by the merits of this suit." It asserts that there is no "reason to require two judicial resolutions of the same issues," and thus that "[t]his case, representing an unprecedented assertion of power by the Attorney General, should be dismissed as moot."

From the representations made to us, it is true that the other case does not have the defects which, as we shall determine, exist in this proceeding. The pendency of that other case, however, does not render this proceeding moot. The controversy between the parties to this appeal persists. Thus, we overrule the motion to dismiss the appeal on grounds of mootness.

## III

The Attorney General asserts that a demurrer was not the appropriate responsive pleading for Burning Tree to file in order to contend that the Attorney General had no right to bring an action challenging the constitutionality of the statute in question. He claims that Burning Tree should have filed a motion raising preliminary objection under Maryland Rule 323 and that having failed to do so "the club has waived its right to assert this defense."

In *Shapiro v. County Comm.*, 219 Md. 298, 149 A.2d 396 (1959), Judge Prescott said for the Court:

"It should be borne in mind that a demurrer is rarely appropriate in a declaratory judgment action. Where a bill of complaint shows a subject matter that is within the contemplation of the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, it is immaterial that the ultimate ruling may be unfavorable to the plaintiff. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree. 1 Anderson, *Declaratory Judgments*, Section 318." 219 Md. at 302–03, 149 A.2d at 398–99.

The inappropriateness of a demurrer to the merits in a declaratory judgment action was further noted in *Hunt v. Montgomery County*, 248 Md. 403, 237 A.2d 35 (1968). Chief Judge Hammond said for the Court:

"The reason is plain why a demurrer should be used in declaratory judgment actions only to challenge the legal availability or appropriateness of the remedy.

'Where the plaintiff's pleading sets forth an actual or justiciable controversy, it is not subject to demurrer since it sets forth a cause of action, even though the plaintiff may not be entitled to a favorable declaration on the facts stated in his complaint; that is, in passing on the demurrer, the court is not concerned with the question whether the plaintiff is right in a controversy, but only with whether he is entitled to a declaration of rights with respect to the matters alleged.' 22 Am. Jur.2d *Declaratory Judgments*, § 91 (1965)." 248 Md. at 409, 237 A.2d at 38.

Moreover, in *Borders v. Board of Education*, 259 Md. 256, 269 A.2d 570 (1970), ultimately quoting from *Shapiro* as having reached the "same conclusion," the Court said, citing several cases, "[I]t is well settled in this State and elsewhere that the only place a demurrer has in declaratory judgment is to challenge the appropriateness of the remedy." 259 Md. at 258, 269 A.2d at 571.

In this case, Burning Tree is asserting that there is no justiciable controversy, that the Attorney General has not asserted such standing as is cognizable in a declaratory judgment action, and that the Attorney General has no right to bring the action. It follows, therefore, that these assertions fall squarely within the rule delineated in the above cases with respect to when a demurrer to a declaratory judgment action may properly be filed. Therefore, the contention of the Attorney General on this issue is without merit.

## IV

The Attorney General asserts two theories upon which he says he is entitled to maintain this proceeding: the "dilemma" doctrine and his inherent powers as Attorney General. We agree with neither contention. We shall assume arguendo for the purpose of our decision that there is a justiciable controversy.

## A

The Attorney General contends that he is a public official faced with "administering" a statute he believes to be unconstitutional and that he thus has standing to maintain a declaratory judgment action in order to extricate himself from this incongruous position. He argues that the command of § 19(e)(4), which requires him to determine whether a club is operated with the primary purpose of serving a single sex, squarely places him within the doctrine.

E. Borchard, *Declaratory Judgments* 771 (2d ed. 1941) states:

"Attention may properly be called to the dilemma of the public officer either in refusing to act under a statute he believes to be unconstitutional or in carrying it out and later finding that it was unconstitutional: for refusing to act, he may expose himself to an action in tort, removal from office, fine, or even greater penalty; for acting, he may be exposed to an action for damages or disciplinary measures. Tax collectors, sheriffs, enforcing officers of all kinds are thus compelled to assume, under great jeopardy, the risks of constitutionality; and in many states, on a writ of mandamus, the mandamused officer cannot raise the defense of unconstitutionality of the governing statute. To compel an officer, feed or salaried, thus to stake his security and livelihood in every case on the correctness of his conjecture on the constitutionality of the statute is a burden which no civilized system should impose upon any officer. Even those courts which protect the officer against mistaken action under a warrant fair on its face simply throw on the victim of the officer's acts the risks and consequences of the mistake.

"Needless to say, the declaratory judgment, initiated either by the officer or by the citizen affected, supplies the way out of the dilemma. It avoids all the attendant risks of mistaken and unconstitutional action, without delaying seriously the performance of public functions." (Footnotes omitted.)

It is clear, however, that the type of official that Professor Borchard envisioned as being empowered to maintain such an action is an administrative one. *See id.* at 976, 978–80, 982–83.

We find five cases in which we have discussed or applied the dilemma doctrine: *State's Atty. v. City of Balto.*, 274 Md. 597, 337 A.2d 92 (1975); *Baltimore County v. Churchill, Ltd.*, 271 Md. 1, 313 A.2d 829, *appeal dismissed*, 417 U.S. 902, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974); *Director of Finance v. Alford*, 270 Md. 355, 311 A.2d 412 (1973); *City*

*of Baltimore v. Concord,* 257 Md. 132, 262 A.2d 755 (1970); *Pressman v. State Tax Commission,* 204 Md. 78, 102 A.2d 821 (1954). In each of these cases, except for *Pressman,* the official was responsible for administering the particular statute being challenged. In other words, the official whose "dilemma" provided the impetus necessary to bestow upon him standing to maintain a declaratory judgment action was the one charged with carrying out the provisions of the challenged statute. Moreover, in each case an existing controversy between the parties provided the basis for the official's being granted standing.

The first case we have found in Maryland which mentions the dilemma doctrine is *Pressman,* 204 Md. 78, 102 A.2d 821. The plaintiffs, Baltimore City and a taxpayer, sought a declaration that a statute which reduced the franchise tax on mutual savings banks located within the State was unconstitutional. *Pressman* was decided a relatively short period of time after the enactment of Ch. 724 of the Acts of 1945, which reenacted the Uniform Declaratory Judgment Act in Maryland. As the General Assembly made clear in its preamble, this reenactment was intended to blunt decisions of this Court relative to the act as originally enacted by Ch. 294 of the Acts of 1939. *See* the editor's note to Code (1957) Art. 31A, § 1.[2] In *Pressman* the Court was

---

**2.** In *Ryan v. Herbert,* 186 Md. 453, 47 A.2d 360 (1946), Chief Judge Marbury said for the Court:

"In the case of *Caroline Street Permanent Building Association No. 1 v. Sohn,* 178 Md. 434, 13 A.2d 616 [ (1940) ], the Court held that a judgment for declaratory relief was not intended to supersede subsisting rights of litigation, and that, unless there was an actual controversy, proceedings under the Act could not be sustained. The Act of 1945, Chapter 724, in its preamble, said in effect that the General Assembly thought that the existence of an immediate cause of action and another adequate remedy did not preclude judgment for declaratory relief, and that it was intended by the repeal and re-enactment to change the wording of the Act so that it should clearly and unmistakably express that intention. The new Section 6 is the means by which that intention was expressed." 186 Md. at 458–59, 47 A.2d at 362–63.

The former § 6 was very brief. The amended section provided, among other things, "[T]he mere fact that an actual or threatened

concerned, among other things, with whether administrative action had been by-passed. Judge Delaplaine there discussed for the Court situations in which challenges to the constitutionality of a statute had been permitted. He said for the Court:

> "We hold, therefore, that, in view of the desirability of having the question of constitutionality determined for the benefit of the members of the State Tax Commission and other State, City and County officials, as well as the savings banks and the taxpayers generally, the request for a declaratory decree was not inappropriate. It can readily be appreciated that a public official sometimes faces a dilemma either in refusing to act under a statute he believes to be unconstitutional, or in carrying it out and subsequently finding it to be unconstitutional. In commenting on the value of a judicial declaration in such a situation, Professor Borchard wrote as follows: 'To compel an officer * * * thus to stake his security and livelihood in every case on the correctness of his conjecture on the constitutionality of the statute is a burden which no civilized system should impose upon any officer. * * * Needless to say, the declaratory judgment, initiated either by the officer or by the citizen affected, supplies the way out of the dilemma. It avoids all the attendant risks of mistaken and unconstitutional action, without delaying seriously the performance of public functions.' *Borchard, Declaratory Judgments,* 2d Ed., 771." 204 Md. at 85, 102 A.2d at 825.

*Pressman* was not a dilemma case. In the light of that which we shall discuss in subsection B of this part IV, it is of interest to note that the Court in *Pressman* referred to what was then Art. 31A, § 11. This section provided that

---

controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case in which the other essentials to such relief are present . . . ." Ch. 724 of the Acts of 1945.

where an act was alleged to be unconstitutional, a copy of the proceeding must be served on the Attorney General. The Court said, "Hence, the Attorney General was entitled to have notice of the proceedings, and to have the opportunity to decide whether to intervene on behalf of the State or any State agency affected." *Id.* at 86, 102 A.2d at 826.

In *Concord,* 257 Md. 132, 262 A.2d 755, Baltimore City had instituted condemnation proceedings relative to property owned by two churches. A stipulation was filed with the petitions for condemnation which stated that the constitutionality of the relevant Maryland Code provisions would be submitted for judicial determination. A declaratory judgment action subsequently was instituted by the City, its Director of Finance, and its Comptroller. We determined that the Director of Finance and the Comptroller were placed in the dilemma recognized in *Pressman* because they were responsible for carrying out the provisions of a statute which authorized them to take direct financial actions with respect to a private party. We noted in *Concord:*

"In holding that the individual appellants had standing, we are not overlooking the principles that the City, as a creature of the State, possesses no power which it may invoke against the State, even on constitutional grounds ... and may have even less right to challenge the constitutionality of a statute under which it is proceeding." 257 Md. at 139, 262 A.2d at 759 (citations omitted).

In *Alford,* 270 Md. 355, 311 A.2d 412, the official involved in a dilemma was, like those in *Concord,* charged with disbursing public funds. In that case, the Baltimore City Director of Finance was found to be placed in a position of peril by virtue of a conflict between a letter from the City Solicitor advising him not to pay special disability retirement benefits to a policeman and his duty under a statute authorizing such payment.

The law challenged in *Churchill,* 271 Md. 1, 313 A.2d 829, involved tax refunds. Baltimore County sought declaratory relief against two corporations, the Director of the State

Department of Assessments and Taxation and the Attorney General of Maryland to the effect that a statute under which certain tax refunds were to be paid was unconstitutional. The County also sought an injunction against hearings which had been scheduled before the Department of Assessments and Taxation on the refunds claimed. By the time the case came on for hearing Directors of Finance of Baltimore County and Anne Arundel County, among others, had intervened as parties plaintiff. The trial judge concluded that Baltimore City and the various counties which had become involved in the litigation lacked the requisite standing. As the Court put it, however, "in order to reach the merits of the case [the trial court] assumed, without deciding, that at least one of the county officials could maintain the suit, even though all of them had failed to allege that they would be subject to a pecuniary loss or to an increase in their taxes . . . ." 271 Md. at 5, 313 A.2d at 832. After quoting from *Concord* on the subject and then reiterating that "[t]he political subdivisions, as creatures of the State, have 'no right to question the constitutionality of the acts of [their] superior and creator,' " Judge Singley went on to say for the Court:

"The difficulty here is that there is some doubt that the county officials here involved were faced with the dilemma encountered in *City of Baltimore v. Concord Baptist Church, Inc., supra,* since it can be argued that their duty was merely ministerial here, because the responsibility for determining erroneous assessments lay, under the terms of the Act, with either the assessing authority of Baltimore City and of the counties, or of the State, and not with the local tax collectors. In order to reach the merits, we shall assume, arguendo, that the individual appellants have standing here." 271 Md. at 9, 313 A.2d at 834.

The last case in which we have previously applied the dilemma doctrine is *State's Attorney v. City of Baltimore,* 274 Md. 597, 337 A.2d 92. The dispute there arose as a result of a statute enacted by the General Assembly (Code

**24**

(1957, 1972 Repl.Vol.) Art. 53, § 44), providing that after July 1, 1973 violations of the Building and Electric Code in Baltimore City would be actions at law and that "[j]urisdiction in all cases of violations of [such code] shall be vested in the District Court of Baltimore City having civil jurisdiction." Judge Eldridge said for the Court that prior to the enactment of that statute

"[a]part from the effect of Art. 53, § 44, violations of Article 32 of the Baltimore City Code (1966 Edition) (the 'Building Code of Baltimore City') and violations of Baltimore City Ordinance No. 902, approved December 22, 1966 (the 'Housing Code of Baltimore City'), are criminal offenses (misdemeanors), punishable by a fine of up to three hundred dollars for each offense." 274 Md. at 599, 337 A.2d at 94.

About ten days before the statute was to become effective, the State's Attorney of Baltimore City advised the City Solicitor of Baltimore City that after July 1, 1973, the responsibility for legal action in cases arising under the Building and Electrical Code would be transferred to the office of the City Solicitor. The City then instituted a declaratory judgment action against the State's Attorney seeking both a declaration that Art. 53, § 44 was unconstitutional and a mandatory injunction requiring that the State's Attorney continue the criminal prosecution of the Building and Electrical Codes violations. Subsequently, the Commissioner of the Department of Housing and Community Development of Baltimore City intervened as a party plaintiff. The defendants argued that Baltimore City had no power to challenge the validity of the statute in question because it is a political subdivision of the State. The trial judge (Cole, J.) held that since the commissioner was the official "charged with the responsibility of enforcing the housing code and building code," he was entitled to maintain the action and, therefore, it was not necessary to decide whether Baltimore City had standing. In this Court the issue was again raised as to whether Baltimore City might

challenge the constitutionality of the statute in question. Judge Eldridge said for the Court:

"[I]t was stipulated by all parties that the plaintiff Embry, the Commissioner of Housing and Community Development of Baltimore, is the city official responsible for the administrative enforcement of the Building and Electrical Codes of Baltimore City. Therefore, we conclude that he had standing under the principle that a public official, faced with a dilemma 'either in refusing to act under a statute he believes to be unconstitutional, or in carrying it out and subsequently finding it to be unconstitutional,' has standing to bring a declaratory judgment action to challenge the validity of the statute. *Baltimore County v. Churchill, Ltd., supra,* 271 Md. at 5 [313 A.2d 829]; *City of Baltimore v. Concord, supra,* 257 Md. at 138 [262 A.2d 755]; *Pressman v. State Tax Commission,* 204 Md. 78, 85, 102 A.2d 821 (1954). Since one of the plaintiffs, Commissioner Embry, had standing to bring the action, it is unnecessary for us to consider the matter of Baltimore City's standing." 274 Md. at 602, 337 A.2d at 96.

Turning to the provisions of Art. 81, § 19(e)(4), the Attorney General's role under the statute is limited to a determination as to whether a club's facilities "are operated with the primary purpose ... to serve or benefit members of a particular sex ...." The Attorney General merely is a fact-finder. He does not administer the statute. Rather, the statute is administered by the State Department of Assessments and Taxation, the agency with whom clubs eligible for the preferential tax treatment under § 19(e) enter into agreements. The Attorney General is not placed in a dilemma similar to that discussed in our cases where, by way of example, a public official might on the one hand be directed to pay out certain funds pursuant to law and on the other be subject to suit for improperly paying out funds. The Attorney General is faced with neither an action in tort, nor removal from office, nor "even greater penalty" for his actions under the statute. Moreover, he is not exposed to

an action for damages or disciplinary measures for making the determination under § 19(e)(4). It will be recalled that Professor Borchard saw such potential exposure as a criterion for application of the dilemma doctrine. Therefore, the Attorney General does not fit within the dilemma doctrine as enunciated either in our cases or in Professor Borchard's treatise.

## B

■ As an alternative argument relative to standing, the Attorney General asserts that he is a person within the meaning of the Declaratory Judgment Act (Code (1973) § 3–401, Courts and Judicial Proceedings Article). He claims that as the person who "is named in § 19(e)(4) of Article 81 as the official responsible for administering an unconstitutional statute, and is adversely affected and threatened with liability by the very existence of the latter provision, he has ample authority to bring a declaratory judgment action against Burning Tree." In our discussion of the dilemma doctrine, we have already dealt with this first prong of the Attorney General's argument. In addition, it is asserted that "this suit was undertaken with the prior knowledge and approval of the Governor.... Thus, it is expressly sanctioned by Article V, § 3(a)(2) of the Maryland Constitution." [3] Finally, the Attorney General states that "the powers conferred upon the Attorney General under Article 32A, § 2, the common law and § 3(b) and § 3(a)(2) of Article V of the Maryland Constitution also support his authority to bring a declaratory judgment action on behalf of the State against Burning Tree to challenge the constitutionality of § 19(e)(4) of Article 81."

Maryland Constitution Art. V, § 3, relative to the powers of the Attorney General, provides in pertinent part:

---

3. The petition for declaratory judgment does not aver such approval nor does the record disclose it, in contrast to a case such as *In Re Special Investigation No. 195,* 295 Md. 276, 277, 454 A.2d 843, 843 (1983), where letters of authorization were a part of the record, although that case arose in a different context.

"(a) The Attorney General shall:

"(1) Prosecute and defend on the part of the State all cases pending in the appellate courts of the State, in the Supreme Court of the United States or the inferior Federal Courts, by or against the State, or in which the State may be interested, except those criminal appeals otherwise prescribed by the General Assembly.

"(2) Investigate, commence, and prosecute or defend any civil or criminal suit or action or category of such suits or actions in any of the Federal Courts or in any Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended.

"(3) . . .

"(4) Give his opinion in writing whenever required by the General Assembly or either branch thereof, the Governor, the Comptroller, the Treasurer or any State's Attorney on any legal matter or subject.

"(b) The Attorney General shall have and perform any other duties and possess any other powers, and appoint the number of deputies or assistants, as the General Assembly from time to time may prescribe by law.

"(c) . . .

"(d) The Governor may not employ any additional counsel, in any case whatever, unless authorized by the General Assembly."

Although the language has changed, the powers of the Attorney General as set forth above are virtually unchanged since the adoption of the Constitution of 1867. *See Constitutional Revision Study Documents* 978–80 (1968).

In addition to Art. V of the Constitution, the Attorney General claims statutory support for his contention that he is authorized to maintain this action. First, he relies on Code (1957) Art. 32A, which was originally enacted by Ch.

560 of the Acts of 1916. Section 1 provides that the Attorney General shall be the head of the Department of Law of the State of Maryland. Code (1957, 1983 Repl.Vol.) Art. 32A, § 2 sets forth the general authority and duties of the Attorney General as follows:

"The Attorney General has general charge, supervision and direction of the legal business of the State, except as provided in § 12 of this article and any other provision of law. The Attorney General, his deputies, and his assistants shall perform the duties now or hereafter prescribed by the Constitution and laws of this State. In addition, the Attorney General shall be the legal adviser and representative of and perform all legal work for the

"Board of supervisors of elections of Baltimore City,

"Board of liquor commissioners of Baltimore City,

"The Sheriff of Baltimore City,

and all other boards, commissions, departments, officers or institutions of the State government, except as provided in § 12 of this article, or as otherwise provided by law."

The exceptions in § 12 are as follows:

"The provisions of this article shall not apply to the Public Service Commission of Maryland, the boards of supervisors of elections of the several counties of the State, the boards of school commissioners of the several counties of the State, or to any county boards or officers, but the powers and authority of such boards or officers to appoint, employ or have their own counsel shall continue as now or hereafter prescribed or authorized by law; and notwithstanding anything in this article contained, the State reformatories and other State institutions may employ local counsel to represent them in habeas corpus cases."

The employment of special counsel by boards and commissions is prohibited by the terms of § 5(a) which states:

"It is unlawful for any board, commission, department, officer or institution of the State government to retain or

employ or to continue the employment of any counsel or legal adviser whatever, in connection with the performance of their, its or his duties, or to be represented, in the performance of any of the duties imposed upon them, it or him, by any counsel or legal adviser whatever, other than the Attorney General, his deputies or assistants, or a special attorney or counsel appointed by the Attorney General." [4]

Art. 32A, § 11, unchanged since its enactment in 1916, provides, "The Attorney General, upon written request to the Governor approved in writing by the Governor, may from time to time employ such additional assistant counsel as, in his judgment, may be necessary, in connection with the performance of the duties of his department in extraordinary or unforeseen cases, or in special local county work."

Second, the Attorney General notes that Code (1973) § 3–405(c), Courts and Judicial Proceedings Article, a part of the Declaratory Judgment Act, can be construed consistently with his attempt to maintain this suit. That section provides:

*"Role of Attorney General.*—If the statute, municipal or county ordinance, or franchise is alleged to be unconstitutional, the Attorney General need not be made a party but, immediately after suit has been filed, shall be served with a copy of the proceedings by certified mail. He is entitled to be heard, submit his views in writing within a time deemed reasonable by the court, or seek intervention pursuant to the Maryland Rules." [5]

---

**4.** We have reason to believe that prior to the enactment of Ch. 560 of the Acts of 1916, which repealed "all Acts and parts of Acts conflicting or inconsistent with any of the provisions of th[at] Act," boards and commissions had their own counsel. *See, e.g.,* the remarks of Judge John B. Gray, Jr., at the memorial services for former Chief Judge Ogle Marbury, 271 Md. XXIII.

**5.** The revisors of the Code departed from the language of Code (1957) Art. 31A, the Uniform Declaratory Judgment Act. In it § 11 requires that "if the statute ... is alleged to be unconstitutional the Attorney

As we shall explain more fully later in this opinion, we do not believe that any of these constitutional or statutory provisions bestow upon the Attorney General the authority necessary for him to have standing in the instant case. Moreover, we do not share the Attorney General's view that his common law powers would enable him to bring this action. In *Murphy v. Yates*, 276 Md. 475, 348 A.2d 837 (1975), Judge Singley carefully traced the Maryland constitutional provisions relative to the Attorney General for the Court. By constitutional amendment in 1817, provisions in the Constitution of 1776 relative to the Attorney General were repealed and his powers were vested in such persons as the General Assembly might thereafter direct. A statute adopted in 1817 provided that the Attorney General was to be appointed. He was to prosecute and defend cases in the Court of Appeals by or against the State or wherein the State might be interested in the same manner that the Attorney General previously was accustomed to do and was to have and exercise the powers and authorities relative to the same that the Attorney General previously had. In addition, provision was made in the statute for a District Attorney in each judicial district of the State. This attorney was to "have, use, exercise and perform, all and every the powers, authorities and duties, which the attorney general of this state, or his deputies, heretofore had, used, exercised and performed, and [was to] prosecute and defend, on the part of the state, all civil actions [then] depending, or which m[ight] [t]hereafter be brought by or against the state, in the county courts of the judicial district for which he [might] be commissioned, in the same manner, and with the like power and authority, as the attorney general, or his deputies [t]heretofore could do ...." In *Murphy*, 276 Md. at 483, 348 A.2d at 841, Judge Singley noted for the Court "that the amendment caused to be identified by statute the powers and duties which the Attorney General had tradi-

General of the State shall also be served with a copy of the proceeding and be entitled to be heard."

tionally exercised and performed, including what had been the constitutional powers of the office [and] redistributed the duties among the Attorney General and the District Attorneys ...."

An 1821 statute provided that it was "the duty of the said attorney general to prosecute and defend on the part of the state, all cases [then] depending, or which m[ight] [t]hereafter be brought in, or removed to any of the counties of this state, or wherein the state sh[ould] or m[ight] be interested, in the same manner, as the attorney general [t]heretofore was accustomed to do or could do ...." Judge Singley commented for the Court in *Murphy*, "Once again, the common law powers of the office became statutory." 276 Md. at 483, 348 A.2d at 841.

The Constitution of 1851 forbade passage of any act for appointment of an Attorney General. It provided for the election of a State's attorney for each county and Baltimore City. These officers were to "perform such duties ... as [were then] prescribed by law for the attorney general and his deputies, and such other duties ... as m[ight] [t]hereafter be prescribed by law ...." The Court in *Murphy* commented relative to this provision, "As a consequence, the common law powers of the Attorney General which had been delineated by Chapter 126 of the Laws of 1821 were transferred to and made the constitutional powers and duties of the State's Attorney." 276 Md. at 484, 348 A.2d at 842.

The Constitution of 1864 recreated the office of Attorney General. He was to prosecute and defend on the part of the State all cases in this Court or in the Supreme Court of the United States by or against the State or in which the State might be interested. When required by the Governor or the General Assembly, he was to aid any State's attorney. He also was to prosecute and defend any suit in the courts on behalf of the State which the General Assembly or the Governor might direct be commenced, prosecuted, or defended. Further provision was made for a State's attor-

ney to be elected for each county and for the City of Baltimore who was to "perform such duties . . . as [were then] or m[ight] be [t]hereafter prescribed by law. . . ." As Judge Singley put it for the Court, the statute at that time (Ch. 177 of the Acts of 1862) "gave the State's Attorney additional authority to 'prosecute and defend, on the part of the State, all cases in which the State may be interested,' including cases at the appellate level because, in 1862, the office of Attorney General did not exist." 276 Md. at 485, 348 A.2d at 842.

Judge Singley further said for the Court in *Murphy*, 276 Md. at 485, 348 A.2d at 842, "Three years later, Maryland adopted the Constitution of 1867, its fourth and last. Article V, Attorney-General and State's Attorneys, in Section 3, describing the duties of the Attorney General, uses virtually the same language as that contained in the parallel provision of the 1864 Constitution." (Footnote omitted.) *See Constitutional Revision Study Documents* 978–80 (1968).

■ The result of our holding in *Murphy* is that the Attorney General of Maryland has only such powers as are vested in him by the Constitution of Maryland and the various enactments of the General Assembly of Maryland. Therefore, out-of-state case law concerning the powers and authority of the Attorney General is interesting but unpersuasive. Generally, the decisions of courts in other jurisdictions fall into three categories. First, several courts recognize that the Attorney General possesses common law powers and, thus, has broad authority to initiate those suits which he believes are necessary to uphold the public interest. *See, e.g., D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1, 112 Cal.Rptr. 786, 520 P.2d 10 (1974) (en banc); *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865 (Ky.1974); *State ex rel. Olsen v. Public Service Comm.*, 129 Mont. 106, 283 P.2d 594 (1955); *State ex rel. Meyer v. Peters*, 188 Neb. 817, 199 N.W.2d 738 (1972); *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813 (Okla.1973); *Hansen v. Barlow*, 23 Utah 2d 47, 456 P.2d 177 (1969).

Because the Attorney General of Maryland possesses no common law powers, these decisions are not relevant to the present case. Second, some courts have determined that a public official, including the Attorney General, may question the constitutionality of a legislative enactment where the public interest is involved. Unlike the courts listed in the first category, these courts have not specified the source of this authority. However, the reasoning of these cases is no more persuasive given the law of this State. *See, e.g., Federal Express Corp. v. Skelton,* 265 Ark. 187, 578 S.W.2d 1 (1979); *State ex rel. Shevin v. Yarborough,* 257 So.2d 891 (Fla.1972). Third, courts in several states have determined that the Attorney General possesses only those powers which are expressly prescribed in the applicable constitution and statutes. *See, e.g., Arizona State Land Dep't v. McFate,* 87 Ariz. 139, 348 P.2d 912 (1960); *State v. Board of Supervisors,* 228 La. 951, 84 So.2d 597 (1955); *Hill v. Lower Colo. River Auth.,* 568 S.W.2d 473 (Tex.Civ.App.1978); *State ex rel. Dunbar v. State Board,* 140 Wash. 433, 249 P. 996 (1926). Clearly, the decisions of courts in this last category are closest to the conclusion we reach in the present case.

A case such as *Board v. Attorney General,* 246 Md. 417, 229 A.2d 388 (1967), is of no assistance to the Attorney General's position. In that case the General Assembly enacted Ch. 1 of the Acts of 1966 which authorized the Attorney General to institute a declaratory judgment proceeding on behalf of the General Assembly and the Secretary of State. Further, the reliance of the Attorney General on *Reddick v. State,* 213 Md. 18, 130 A.2d 762, *cert. denied,* 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957), is misplaced. There the Governor had written a formal letter to the Attorney General authorizing him to bring suit. Moreover, that case was not analogous to the one at bar because there was a usurpation of the powers and membership of a state board by unauthorized individuals. The decisions in *Board v. Attorney General* and *Reddick* are distinguishable from the present case primarily because the

Attorney General had been granted express authority, by either the General Assembly or the Governor, to initiate a suit not within his constitutional or statutory powers. In this case, the Attorney General has not been so authorized.

■ It is clear from the constitutional and statutory provisions which we have cited that the Attorney General is first and foremost the lawyer of the State. His duties include prosecuting and defending cases on behalf of the State in order to promote and protect the State's policies, determinations, and rights. He is the legal advisor to all State departments and agencies other than those for which specific exception is made by statute. Further, it is common knowledge that before Governors of Maryland approve an act of the General Assembly the Attorney General of Maryland first reviews such legislation to determine whether, in his opinion, it is constitutional. Governors rely upon that advice. Likewise, members of the General Assembly rely upon the advice of the Attorney General as to whether a proposed enactment is valid. Nowhere in the Constitution or in any statute we have found is the Attorney General granted authority to initiate a declaratory judgment action which challenges the constitutionality of a state statute.

Our decision in *Harford County v. Schultz*, 280 Md. 77, 371 A.2d 428 (1977), is analogous to this case and, indeed, we there anticipated a scenario similar to that in the case at bar. There the County Council of Harford County proposed an amendment to the county charter which was vetoed by the County Executive and then passed over his veto. The County brought a declaratory judgment action to have the bill declared invalid. The only named defendant was the Board of Supervisors of Elections for Harford County. The chancellor found the bill in question to be a valid and proper legislative act to be submitted to the voters of Harford County. In the course of his opinion he noted:

" 'The plaintiff, as a body corporate, is actually expressing in this case the views of the Department of Law, which, by Section 402 of the Charter, is an agency of the

Executive Branch of the county government. Nowhere in this case are the views of the Harford County Council expressed, although most certainly the Council is vitally concerned with the outcome of the case. No question of the standing of the plaintiff to bring this action has been raised, however.' " 280 Md. at 79, 371 A.2d at 429. We noted in our opinion that no brief on behalf of the appellee had been filed with us or the Court of Special Appeals. In the process of dismissing the appeal we said:

"Here we have the anomalous situation of the attack on the validity of the ordinance being by the political subdivision which enacted it. It would be similar to the situation which might exist if the Governor were to direct the Attorney General to docket an action in the name of the State contesting the validity of an enactment of the General Assembly. Inevitably in the latter situation the question would arise as to who would protect the presumption of validity, who would appear for and present the arguments which should be presented in an effort to show that the act was valid. The same question arises here. It is obvious that the Board has no interest one way or the other in the outcome of this proceeding. There is no defense here. No one as a party to the case has sought to uphold the validity of the charter amendment which, under our cases, is presumed to be valid. It sits in the position of a forlorn, rejected orphan, without friends or anyone to support or protect it. In a normal contest as to the validity of an enactment through declaratory judgment procedure, a suit is brought by a person, often a taxpayer, with standing to mount such an attack and then the defense is supplied through counsel for the municipality or county or, in the case of the State, by the Attorney General." 280 Md. at 85–86, 371 A.2d at 432.

■ As noted in *Schultz*, there is indeed a presumption of constitutionality which attaches to enactments of the General Assembly. *See, e.g., Hope v. Baltimore County,* 288 Md. 656, 661, 421 A.2d 576, 579 (1980); *Department of Natural Resources v. Linchester,* 274 Md. 211, 218, 334

A.2d 514, 520 (1975); *Beauchamp v. Somerset County*, 256 Md. 541, 547, 261 A.2d 461, 463 (1970). Who has the duty of conducting the defense of a challenged statute if this duty does not rest upon the Attorney General of Maryland? It is no answer to say, as the Attorney General claimed at oral argument, that in this instance Burning Tree is prepared to spiritedly defend the statute. If we were to permit the Attorney General to maintain the present action for this reason, an anomalous result would be reached in a future proceeding, again brought to declare a statute unconstitutional, where the defendant may elect not to defend either for economic or other reasons. In that situation, the matter would go by default and the statute might well be declared unconstitutional, even though if properly defended a contrary result might have been reached.

The fact that the Attorney General believes this or any statute to be unconstitutional does not make it such. Many of us in the practice of law have reached one conclusion and then, possibly upon further research or reflection, have come to a contrary view. As Judge Hammond said for the Court in *First Continental v. Director*, 229 Md. 293, 301, 183 A.2d 347, 350 (1962), "Only a court has the power to declare a statute invalid because it does not comply with constitutional requirements ...." We suspect that there may be instances in which the Attorney General argues for affirmance of convictions in criminal cases where in his heart he knows that the trial court has committed error. Nevertheless, ordinarily it is his duty as the State's advocate to present the best arguments he can possibly muster in support of the State's position. One accused of crime, presumed under our system to be innocent, is entitled to an advocate of his position. A statute, with its presumption of constitutionality, has just as much right to an advocate of its validity. As stated in 22 Am.Jur.2d *Declaratory Judgments* § 85 at 949–50 (1965), "in the absence of the attorney general no party to the proceedings would be authorized to defend the public interest." (Footnote omitted.) Perhaps in the setting in which this case occurs it would be more

accurate to say that there would be no party with the duty of protecting the public interest. We hold that under the Constitution and statutes of Maryland the Attorney General ordinarily has the duty of appearing in the courts as the defender of the validity of enactments of the General Assembly. Thus, he may not maintain this proceeding which seeks to have an act of the General Assembly declared unconstitutional.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.